The People of the State of Illinois ex rel. Illinois Commerce Commission, Plaintiff-Appellant, v. Gerald J. Galvin, d/b/a Jerry's Bus Service, Defendant-Appellee.

Gen. No. 49,061.

First District, First Division.

October 7, 1963.

William G. Clark, Attorney General, of Chicago (Edward V. Hanrahan, Special Assistant Attorney General, of counsel), for appellant.

Robert J. O'Rourke and Donald A. Carr, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This action was filed by the People of the State of Illinois ex rel. Illinois Commerce Commission, under §§ 75 and 76 of the Public Utilities Act of Illinois (Ill Rev Stats 1961, c 111⅔) to restrain defendant from operating a bus service for the transportation

for hire of high school students to and from designated high schools within Cook County, without defendant first obtaining authority from the Illinois Commerce Commission. The matter was submitted to the court upon the agreed facts that appear from the pleadings and from the deposition of Gerald J. Galvin, the operator of the busses. The Superior Court dismissed the petition for Writ of Injunction and denied plaintiff's motion for summary judgment and plaintiff appeals. Plaintiff appealed directly to the Supreme Court which transferred the case to this court.

The defendant, Gerald J. Galvin, doing business as Jerry's Bus Service, owns and operates five motor busses and for four years has provided daily transportation for students to and from six different high schools. The marking on the busses reads either "Jerry's Bus Service" or "School Bus." Each of the busses travels a fixed route, from its starting point to at least one of the designated high schools and later returns along the same route which is a distance of from two to four miles. Students on street corners "flag" the bus and pay either a fixed cash fare or use a token or a twenty-ride pass. The defendant has no prior agreement of any kind with any of the students or their parents for this transportation.

The defendant had never applied for nor obtained from the Illinois Commerce Commission any authority to operate such bus service. The only question presented for our determination is whether the Superior Court should have found defendant to be a "public utility" within the meaning of § 10.3 of the Public Utilities Act of Illinois (Ill Rev Stats 1961, c 111⅔, § 10.3) which would require him to obtain a Certificate of Public Convenience and Necessity from the Illinois Commerce Commission.

68

Plaintiff contends that upon the agreed facts, the trial court should have found the defendant to be a "public utility" within the meaning of § 10.3.

A public utility is defined under § 10.3 as follows:

"Public Utility means and includes every . . . firm, partnership or individual . . . that now or hereafter:

(a) May own, control, operate or manage, within the State, directly or indirectly, for public use, any . . . equipment or property used or to be used for or in connection with the transportation of persons or property . . . between points within this State."

The defendant contends that he is a private carrier solely for the benefit of high school students and not for the benefit of the public and therefore his business is not a public utility within the meaning of § 10.3. He further contends that his operations do not come within the jurisdiction of the Illinois Commerce Commission as stated in the Public Utilities Act (Ill Rev Stats 1961, c 111⅔, § 57), because he does not indiscriminately accept and discharge passengers as may offer themselves for transportation.

Whether, on the facts admitted, defendant is a "public utility" depends upon whether the defendant operates his busses "for public use." In State Public Utilities Commission v. Noble Mut. Tel. Co., 268 Ill 411, 109 NE 298, the defendant company consisted of a group of customers who were dissatisfied with the authorized utilities service and formed a mutual telephone company on a nonprofit basis, but rendered service to its members at cost. They did not offer the services of the corporation to anyone other than corporate members. The Supreme Court in affirming

the trial court's decision that the defendant was a public utility under the statute, stated that the mere fact that the defendant company was not operated for profit did not determine that it was not a public utility. The Court went on to say on page 415:

> "[i]t is not necessary, in order to constitute this a public use, that this service should be extended to the whole world or to include whoever might happen to be temporarily in the Village of Noble or in that vicinity. A public use means public usefulness, utility, advantage or benefit. *To be public the use must concern a community as distinguished from an individual or any particular number of individuals, but it is not essential that the entire community or people of the State, or any political subdivision thereof, should be benefited or assured in the use or enjoyment thereof. The use may be local or limited. It may be confined to a particular district and still be public."* (Emphasis ours.)

The Appellate Court has in various decisions laid down criteria to be used in the characterization of a bus service as either "public" or "private." In South Suburban Motor Coach Co. v. Levin, 269 Ill App 323 the court ruled that the operations of a bus company which transported passengers to and from dog races constituted a public use. The controlling factor in that case was that the defendant offered his services to the public "without any particular discrimination," in that he accepted his passengers off the streets without any prior contractual arrangements.

In Illinois Highway Transp. Co. v. Hantel, 323 Ill App 364, 55 NE2d 710 the court was presented with the situation where during the wartime gas rationing era, factory workers from one factory made specific contractual arrangements for bus transportation be-

70

tween their homes and their common factory destination. No persons other than the employees of Caterpillar Tractor were ever carried on the two busses used and the busses bore the marking, "Caterpillar Workers Only." *The court held that the defendants' activities in the transportation of individual employees of one factory with whom specific arrangements had been made did not render them subject to the jurisdiction of the Commerce Commission as a public utility.*

We think, however, that the case of Jacksonville Bus Line Co. v. Watson, 344 Ill App 175, 100 NE2d 391 is controlling on the issues at bar. In that case the evidence showed that the defendant bus company transported to different named factories any individuals who got onto their busses and paid the required fares. There were no prior arrangements between the bus company and the passengers as to the frequency and periodicity of their use of the service and the busses had no restrictive markings on them as in the Hantel case. The court wrote:

> "It is our opinion that such evidence shows that, in fact, defendant indiscriminately accepts and discharges all such persons as offer themselves for transportation and that such conduct of the defendant is in fact an obvious attempt to evade the provisions of Section 57 of the Public Utilities Act, and that therefore such conduct should not have judicial sanction." (183)

The facts in the instant case are quite similar to those considered by the court in Jacksonville. In both cases the services were directed to the transportation of unspecified individuals from out of a larger ascertainable group. In Jacksonville the passengers were workers at various plants and here the transportation involved students from various high schools. In Jack-

71

sonville the defendant had no knowledge as to who his passengers would be each day and that is also the case here. In neither case was there an attempt to negotiate a formal contractual agreement between the carrier and a specific group of regular passengers.

It is argued that the defendant's busses are not operated "for public use" because they are not available to the general public, but are limited to students attending particular high schools. We do not agree. The defendant's busses are open to the transportation of all students of the schools served by him without any prior discrimination or contractual arrangement. While there appears to be no Illinois case concerning the transportation of students alone, such a case has arisen in and has been decided by the Supreme Court of New York, in Public Service Commission v. Columbo (Misc), 118 NYS2d 873. There approximately 8,000 students rode defendant's busses daily to and from high schools. Defendant's motor busses were operated along stated and regular routes on stated and regular schedules for many years. The defendants, as here, alleged that they received the full support and cooperation of the local school authorities who acted for the best interests of their pupils; that neither the Public Commission nor the City of New York made any complaint during the many years of their operation. The evidence showed that the busses did not traverse any routes served by the Board of Transportation of the City of New York nor was there any other alternative transportation. Also, as in the instant case, the defendants had no prior written or oral agreement with the students they transported or with their parents. In Columbo the court stated on page 877 that:

> "[t]he argument of defendants that they are not common carriers in that they transport students only is groundless. *The rule has now been well established that it is not necessary for a carrier*

72

*to be open to all to make it a public use. 'No carrier serves all the public.* His customers are limited by place, requirements, ability to pay and other facts . . . The public does not mean everybody all the time.' " (Citing cases.) (Emphasis ours.)

The defendant in the case at bar insists that he is not under the jurisdiction of the Illinois Commerce Commission, as provided under paragraph 55 of the Public Utilities Act, inasmuch as he does not indiscriminately serve the public and accept passengers. Admittedly defendant accepts any student for hire who offers himself for transportation along the course on which the busses operate. Paragraph 55a of the Public Utilities Act (Ill Rev Stats c 111⅔, § 57) provides:

"No person . . . shall operate any motor vehicle, along or upon any public street or highway in this State, for the carriage of persons for hire, indiscriminately accepting and discharging such persons as may offer themselves for transportation, along the course on which such vehicle is operated, . . . unless he shall:

"(1) File with this Commission a sworn statement . . ."

Under the agreed facts in this record we conclude that the defendant devoted his property to a "public use" by accepting indiscriminately any student along the route as a passenger for hire and thereby made his business a "public utility" within the meaning of § 10.3 of the Public Utilities Act. There is no restriction by defendant who, among the thousands of students attending the schools served by defendant, may use the busses. The defendant had no prior agreement with the users or their parents. In fact the

defendant does not know at any time which, if any, students would use his busses at any particular time. It is not essential to a public use that its benefits should be received by the whole public or even a large part of it, but they must not be confined to specified privileged persons. People v. Ricketts, 248 Ill 428, 94 NE 71.

Section 8 of Chapter 111⅔ of the Illinois Revised Statutes sets out the various responsibilities which are delegated to the Illinois Commerce Commission. In relation to its powers over public utilities the Commission is instructed to:

> ". . . examine such public utilities and keep informed as to their general condition, their franchises, capitalization, rates and other charges, and the manner in which their plants, equipment and other property owned, leased, controlled or operated are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service but also with respect to their compliance with the provisions of this Act and any other law, with the orders of the commission and with the charter and franchise requirements."

The defendant's business involves the transportation of minors to and from schools. As the business is presently operated neither the parents of these children nor the children themselves have any contractual agreement with the defendant upon which any conditions or requirements for safe and efficient transportation can be based. The Legislature has seen fit to require that in circumstances where the users of a utility do not have the means by specific contractual agreements for enforcing requirements of safety and efficiency that the utility shall be under the supervision of the Illinois Commerce Commission.

The decree appealed from is therefore reversed and the cause is remanded to the Superior Court with directions to grant plaintiff's motion for summary judgment and to vacate the order dismissing the petition for writ of injunction.

Reversed and remanded with directions.

MURPHY, J, concurring.

ENGLISH, PJ, dissenting:
Our decision in this case depends upon the proper interpretation of the statutory language which places under the jurisdiction of the Illinois Commerce Commission only those persons who shall operate a motor vehicle "for the carriage of passengers for hire, *indiscriminately* accepting and discharging such persons as may offer themselves for transportation, along the course on which such vehicle is operated." (Ill Rev Stats 1961, c 111⅔, § 57). I have emphasized the word "indiscriminately" because it furnishes the key to the meaning of the language employed by the legislature to distinguish between public and private carriers.

From my reading of the same cases relied upon by the majority, I reach the conclusion that the facts in the case at bar do not demonstrate *indiscriminate* acceptance and discharge of passengers. Illinois Highway Transp. Co. v. Hantel, 323 Ill App 364, 55 NE2d 710; Jacksonville Bus Line Co. v. Watson, 344 Ill App 175, 100 NE2d 391; Jacksonville Bus Line Co. v. Watson, 349 Ill App 462, 110 NE2d 834.* In my opinion,

---

* In the first Jacksonville Bus case the defendant was found to be a public carrier and in the second case a private carrier. I submit that the critical difference in the facts in the two cases was not that contracts were in existence by the time of the second case, but that the transportation in question had changed its character from indiscriminate to discriminate. Passengers were limited to

75

the prior existence of written contracts between passengers and operator is not requisite to classification as a private carrier. Such contracts are merely evidence of discrimination in the acceptance and discharge of passengers, and if it has been otherwise established, as I believe it has in the case at bar, that the operator does not indiscriminately accept and discharge passengers, then the absence of such contracts does not render him a public carrier.

All of the factors necessary to negative the indiscriminate acceptance of passengers are found among the stipulated facts in the case at bar. Only students of the six particular high schools are accepted as passengers. The schedule of the busses is limited to arrive at the schools in time for the opening of classes in the morning, and to return at the close of classes in the afternoon. The student-passengers are not permitted to alight from the busses at intermediate points. At some of the schools the tokens or passes are sold to the students by school officials. The public transportation available to these schools is less convenient and requires either multiple fares or multiple transfers.

The New York case cited in the majority opinion (Public Service Commission v. Columbo (Misc), 118 NYS2d 873) deals with a statute radically different from the Illinois law and drafted from an entirely different approach. I believe the New York decision to have been correct, but do not find it persuasive here.

I would affirm the judgment of the Superior Court.

employees at plants of one employer; passengers were no longer carried to hospital, laundry, etc.; intermediate stops were eliminated; schedules were limited to the start and close of working hours, etc. Thus the facts evidenced by the contracts in the second Jacksonville case were remedied to meet the objections in the first decision. In the case at bar, however, contracts based on existing facts would bring it within the second rather than the first Jacksonville case and within the decision in Hantel.